IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICK D. THOMPSON,                *
                                    *
              Plaintiff,            *
                                    *
vs.                                 *          No. 4:15-cv-00709-SWW
                                    *
                                    *
HORACE WALTERS, individually        *
and in his official capacity as Chief *
of Police in and for the City of    *
Alexander, AR; CITY OF              *
ALEXANDER, ARKANSAS,                *
                                    *
              Defendants.           *

OPINION AND ORDER

Patrick D. Thompson brings this pro se action against the City of Alexander,

Arkansas (the "City"), and Horace Walters, individually and in his official capacity as

Chief of Police for the City, alleging race discrimination and retaliation in violation of 42

U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e

*et seq.*, and the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. § 16-123-

101 *et seq*.  Thompson claims his employment with the Alexander Police Department

(APD) was terminated because of his race–African-American–and in retaliation for him

exercising his First Amendment right to free speech, *i.e.*, his being a "witness" in a

lawsuit and a memo he sent to the Mayor of the City complaining about Walters.

The matter is before the Court on motion of defendants for summary judgment

[doc.#17].  Thompson has not responded to defendants' motion and the time for doing so

has passed.  For the reasons that follow, the Court grants defendants' motion for summary

judgment.

I.

A.

Thompson has failed to file, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, a statement of the material facts as to which he contends a genuine issue exists to be tried.  Thompson has thus admitted the facts as set forth by defendants in their Statement of Undisputed Facts [doc.#19] as to which they contend there is no genuine issue to be tried.[1]  Accordingly, the facts as described in defendants' for summary judgment are the undisputed facts of this case.  See *Beavers v. Bretherick*, 227 Fed.Appx. 518 (8th Cir. 2007) (per curiam) (citing Local Rule 56.1(c) in concluding that the facts as described in unopposed motion for summary judgment are the undisputed facts of the case).

B.

Thompson began his time with the APD as a reserve officer on May 11, 2011. Thompson was not paid while he was a reserve officer for the APD but, rather, was serving as a volunteer.  On May 8, 2012, Thompson was hired as a Part-Time I officer

---

[1] Local Rule 56.1(a) provides that "[a]ny party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried."  Paragraph (b) of the rule provides that "[i]f the non-moving party opposes the motion it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried." Paragraph (c) of the rule provides that "[a]ll material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b)."

with the APD.  Walters, who is African-American, was Chief of Police for the City from June 2010 to November 20, 2013.

During his employment with APD Thompson was disciplined twice by being placed on administrative leave.  The second time he was placed on administrative leave occurred on August 8, 2012, and was for the following reasons: (1) Thompson's unauthorized traffic stop of a tractor-trailer where he did not have authority; (2) Thompson's change of work schedule without prior approval by Walters; (3) Thompson's actions involving an arrest that occurred at an address in Alexander (the "Lockard arrest"); and (4) Thompson's failure to file an incident report at the end of shift regarding the Lockard arrest.  In his letter informing Thompson that he was being placed on administrative leave, Walters informed Thompson that a decision regarding his employment would be made after the completion of an investigation.

By letter dated August 28, 2012, Walters informed Thompson that his employment with the APD was terminated.  Walters's termination letter listed the following reasons for Thompson's termination: (1) Thompson pepper-sprayed a handcuffed suspect in the rear seat of his assigned patrol unit[2]; (2) Thompson consistently photographed citizens in

---

[2]  This incident occurred during the Lockard arrest.  Lockard was handcuffed in the back seat of Thompson's patrol unit with only his legs from the knee down remaining outside his vehicle.  Lockard was kicking at Thompson from this position.  Walters's understanding of what happened was that Lockard had already been in the back seat of the vehicle and the door was closed, and then Thompson reopened the door for some unknown reason and pepper-sprayed Lockard whose feet were out of the vehicle and kicking at Thompson.  Walters disagreed with Thompson's decision to pepper-spray a suspect who was handcuffed in the back seat of a patrol unit when only the suspect's legs were outside of the unit.

their vehicles for traffic violations after Walters warned Thompson to cease this activity;

(3) Thompson improperly and unsafely stopped a semi-tractor and trailer on I-30 outside

of Thompson's jurisdiction; (4) Thompson manhandled and roughly pushed a handcuffed

suspect in the Saline County Detention Center[3]; (5) Thompson failed to show up for a

mandatory officers' meeting; (6) Thompson failed to report for duty and attended a

classroom instruction and did not call in, thus causing a shift to be unattended for 2 hours;

(7) Thompson improperly searched the door panel of a citizen's vehicle for a mere traffic

stop; (8) numerous complaints from Central Communications regarding Thompson's

radio mannerism; (9) numerous complaints from citizens about Thompson's brash

attitude–these citizens did not want to sign a complaint form because they said they were

afraid Thompson would retaliate against them; (10) Thompson disobeyed instructions

from Walters not to drive his assigned police vehicle to and from his other job on Capital

Avenue; and (11) Thompson drove his assigned police vehicle to Camp Robinson in

North Little Rock without approval; Thompson advised Walters that while he was there,

he assisted an agency with an accident activating his blue lights and other emergency

accessories, which Walters states could have resulted in vicarious liabilities for the City.

## II.

The City moves for summary judgment on the following grounds: (1) Walters was

---

[3] This suspect was Lockard, whom Thompson had earlier arrested and pepper-sprayed. Walters received a call from someone with the Saline County Detention Center who said Thompson had pushed Lockard nearly to the floor in the sally port area.

not served in his individual capacity; (2) Thompson's Title VII claims are untimely; and

(3) as to Thompson's remaining 42 U.S.C. § 1983 and ACRA claims, Thompson has not

established a prima facie case of discrimination or retaliation, and there in any case

existed legitimate, non-discriminatory and non-retaliatory reasons for terminating

Thompson's employment with the APD.

### A.

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely

disputed, a party must cite "to particular parts of materials in the record," or show "that

the materials cited do not establish the absence or presence of a genuine dispute," or "that

an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider

other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The inferences to be drawn from

the underlying facts must be viewed in the light most favorable to the party opposing the

motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations

omitted).  Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks

omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,*

475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

In not responding to defendants' motion for summary judgment, Thompson has not contested the arguments defendants have set forth in their motion that they state entitles them to summary judgment. Accordingly, Thompson has waived those arguments. See *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes a waiver of that argument").

### 1. Service on Walters

Thompson presents no evidence to counter the City's argument that Walters, individually, has not been served and there is nothing in the record to the contrary. Accordingly, the Court dismisses Walters, in his individual capacity, from this action.

Thompson's claims against Walters in his official capacity are equivalent to claims against the City. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). As such, Thompson's official capacity claims against Walters are a legal redundancy because the City is also a party. *Gunn v. Langston*, No. 3:10-cv-35-DPM, 2011 WL 3667759, at *1 (E.D. Ark. Aug. 22, 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Accordingly, any reference to the City that has

or will be made encompasses Walters in his official capacity.

2. Timeliness of the Title VII Claims

This is a refiling of a previous action–*Thompson v. Walters, et al.*, No. 4:14-cv-00047-SWW–that, on motion of Thompson, was dismissed without prejudice on November 14, 2014.[4]  Arkansas's Savings Statute–Ark. Code Ann. § 16-56-126–gives a plaintiff one year to refile an action after a nonsuit.  Thompson timely refiled this action as to his 42 U.S.C. § 1983 and ACRA claims on November 16, 2015.[5]  Title VII actions, however, are governed by a federal statute of limitations which requires that an action be brought within 90 days after the plaintiff receives notice of the right to sue.  *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 759 n.2 (8th Cir. 1983) (citing 42 U.S.C. § 2000e-5(f)(1)).  "Because Title VII actions are governed by a federal statute of limitations, the Arkansas saving clause is inapplicable."  *Id.* (citations omitted).  Accordingly, Thompson's Title VII claims are untimely and the City's motion for summary judgment on those claims is granted.  But even if Thompson timely filed his Title VII claims, those claims fail on the merits.

3. Race Discrimination

Race discrimination claims under 42 U.S.C. § 1983, Title VII and ACRA are evaluated under the same standards.  *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 902 (8th Cir. 2015); *Conyears v. Tucker*, No. 2:11-cv-00094-KGB, 2014 WL

---

[4] At the time, Thompson was represented by counsel.

[5] November 14, 2015, fell on a Saturday.

1171313, at *6 (E.D. Ark. March 21, 2014).  To survive a motion for summary judgment on a race discrimination claim, a plaintiff must either present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Macklin v. FMC Transport, Inc*., 815 F.3d 425, 427 (8th Cir. 2016) (quotation marks and citation omitted).  Because Thompson has presented no direct evidence of race discrimination,[6] his claim is analyzed under the *McDonnell Douglas* burden-shifting framework.  *Id.*  Under that framework, Thompson is first required to establish a prima facie case of race discrimination by showing (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).  *Id.*  If Thompson establishes his prima facie case, the burden shifts to the City to show a nondiscriminatory reason for the adverse employment action.  *Id.*  If the City does so, the burden shifts back to Thompson to establish that the proffered nondiscriminatory reason is pretextual.  *Id.*, at 427-28.  To survive summary judgment, Thompson must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the City's motive.  *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir.

---

[6] Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quotation marks and citation omitted).

2016) (citation and quotation marks omitted).

Thompson does not dispute the City's argument that he failed to show that he was meeting the City's legitimate expectations and that the circumstances surrounding his termination give rise to an inference of discrimination. Accordingly, Thompson has not established a prima facie case of race discrimination and he in any case has not shown that the City's legitimate, nondiscriminatory reason for his termination–his repeated infractions–is pretextual.

### 4. Retaliation

Retaliation claims under 42 U.S.C. § 1983, Title VII and ACRA are evaluated under the same standards. *Bennett v. Riceland Foods, Inc.*, No. 5:11cv00104, 2012 WL 481827, at *5 (E.D. Ark. Feb. 15, 2012); *Wilson v. Arkansas State Highway and Transp. Dept.*, No. 4:11-cv-00855-KJB, 2015 WL 520734, at *18 (E.D. Ark. Feb. 9, 2015). To survive a motion for summary judgment on a retaliation claim, a plaintiff may either offer direct evidence of retaliation or satisfy the *McDonnell Douglas* burden-shifting framework. *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014).[7] Having failed to produce direct evidence of retaliation, Thompson must first establish a prima facie case of unlawful First Amendment retaliation by showing (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between

---

[7] "'Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct.'" *Id.* (citation omitted).

the two.  *Butler v. Crittenden County, Ark.*, 708 F.3d 1044, 1050-51 (8th Cir. 2014);

*Okruhlik v. University of Arkansas*, 395 F.3d 872, 878 (8th Cir. 2005).  To establish

causation, Thompson must prove "'the desire to retaliate was the but for cause of'" the

adverse employment action–that is, "'that the unlawful retaliation would not have

occurred in the absence of the alleged wrongful action or actions of [the City].'"  *Wright

v. St. Vincent System*, 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Tex. Sw. Med.

Ctr. v. Nassar,* 570 U.S. —, —, 133 S.Ct. 2517, 2528, 2533 (2013)).  "'It is not enough

that retaliation was a 'substantial' or 'motivating' factor in the employer's decision.'"

*Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (quoting *Vega v. Hempstead

Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2nd Cir. 2015)).  If Thompson establishes his

prima facie case, the City must then rebut it by presenting evidence of a legitimate, non-

retaliatory reason for the adverse employment action it took against Thompson.  *Fiero v.

CSG Systems, Inc.*, 759 F.3d 874, 880 (8th Cir. 2014) (citation omitted).  If the City

satisfies this burden, Thompson is then obliged to present evidence that (1) creates a

question of fact as to whether the City's proffered reason was pretextual and (2) creates a

reasonable inference that the City acted in retaliation.  *Id.*

Thompson does not dispute the City's argument that he has failed to present

evidence of a causal connection between any exercise of his First Amendment rights and

his termination.  Accordingly, Thompson has not established a prima facie case of

retaliation and he in any case has not shown that the City's legitimate, non-retaliatory

reason for his termination–his repeated infractions–is pretextual.

III.

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [doc.#17].  The Court will enter judgment accordingly.

IT IS SO ORDERED this 18th day of October 2016.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE